564 A.2d 119

**SOUTH DOWN LIQUORS, INC.**

v.

**Roy D. HAYES, Jr.**

**No. 178, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 5, 1989.
Certiorari Granted Jan. 12, 1990.

T. Michael Preston (Anderson, Coe & King, on brief), Baltimore, for appellant.

H. Robert Scherr (Scherr, Cole & Murphy, on brief), Pikesville, for appellee.

Submitted before WILNER and ROSALYN B. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired, specially assigned).

WILNER, Judge.

This appeal presents a single narrow question: where an employer/insurer has paid workers' compensation benefits to an injured employee and the employee, pursuant to Md.Ann.Code art. 101, § 58, thereafter sues the party who caused the injury, can that third party compel the employer/insurer to join the action as a co-plaintiff on the ground that the employer/insurer is a "real party in interest"? Our answer is "no."

The facts here are simple and undisputed. Roy Hayes, appellee, was employed as a delivery man by Chesapeake Bay Distributing Company. While in the course of delivering beer to one of Chesapeake's customers, South Down Liquors, Inc., Hayes was injured when a piece of equipment he was using fell into a hole in the floor of South Down's storage trailer. He filed a worker's compensation claim against Chesapeake and eventually was awarded compensation of $37,323. Hayes then filed this action against South Down in the Circuit Court for Anne Arundel County alleging negligence in allowing the hole in the floor to exist.

When, in response to interrogatories, Hayes disclosed the compensation award, South Down moved to have Chesapeake's compensation insurer, Selective Insurance Compa-

ny, joined as a party plaintiff. It urged that, as Selective had "a statutory lien against any recovery by the Plaintiff," it was a "real party in interest" and therefore was required to join as a co-plaintiff under Md. Rule 2-201. Hayes resisted that motion, arguing that any question of required joinder was governed by Md. Rule 2-211 and that joinder of Selective was not mandatory under that rule.

Agreeing that Rule 2-211 did not require that Selective be joined as a party, the court denied South Down's motion, whereupon this appeal was filed.[1]

The issue presented here requires an examination of the two Rules cited—Rules 2-201 and 2-211—and how they relate to, and are affected by, Md.Ann.Code art. 101, § 58. We shall begin with the statute.

Section 58 sets forth the respective rights of an injured employee and his employer where, as here, the employee suffers an injury that may entitle him to both worker's compensation benefits from his employer and damages from some third party who caused the injury. It begins by purporting to give the employee an initial option: he may sue the third party at law or he may seek compensation under the Act.[2] If he seeks, and receives, an award of

---

1. The right of South Down to file this appeal at this time seems to be established by *City of Baltimore v. Moore*, 209 Md. 516, 121 A.2d 857 (1956). Quoting from *Northwestern Nat. Ins. Co. v. Rosoff*, 195 Md. 421, 73 A.2d 461 (1950), the Court stated, at 523:
    "[W]here the trial court declines to implead a third party, the defendant's right to proceed against that third party, in that proceeding, has been finally determined, and he should have the right to have that question settled by the appellate court before he is forced to submit to trial without such third party in the case. We think, where impleading is denied, the spirit and intention of the rule are best served by immediate appeals."
    *See also Kloze v. Provident Bank*, 220 Md. 469, 154 A.2d 711 (1959) and *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 98 n. 11, 394 A.2d 801 (1978).

2. In fact, this is not an election between mutually exclusive remedies. The employee may seek and receive both compensation from his employer and damages from the third party, and he may pursue these remedies sequentially or contemporaneously. The only apparent ca-

compensation, both he and his employer (or the employer's insurer, if the employer is insured) may then proceed against the third party.

For the first two months following passage of the Commission's award, the employer/insurer has the exclusive right to bring an action to "enforce for their benefit ... the liability of such other person." If, in such an action, damages are recovered in excess of the compensation paid, the excess, less the cost and expense of bringing the action, "shall be paid to the injured employee...." If the employer/insurer fails to bring such an action within the two-month period, the employee may sue the third party. If he does so and gets a recovery, the recovery goes, first, to reimburse him for the cost and expense of the action, second, to reimburse the employer/insurer for the compensation paid or awarded, and, last, to the employee.

With the gloss of case law, § 58, in effect, affords an employer/insurer three "rights" to proceed against the third party, and it affords the employee two such "rights." During the first two months following passage of the award, the employer/insurer has the sole, exclusive right to sue the third party; thereafter, it has a concurrent right with the employee to bring the action; and, during that period of concurrency, it has a right under Md. Rule 2–212 (Permissive Joinder of Parties) to intervene in any action brought initially by the employee. *See Collins v. United Pacific Ins. Co.*, 315 Md. 141, 148 n. 5, 553 A.2d 707 (1989), and cases cited therein. The employee has no exclusive right comparable to that of the employer/insurer. He does, however, have the concurrent right to sue after the expiration of the two-month period and, if an action is brought by

---

veat is that the employee may not proceed to judgment against the third party and then seek an award of compensation, for that would adversely affect the employer/insurer's statutory right of action against the third party. *See Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 492 A.2d 1286 (1985); *Johnson v. Miles*, 188 Md. 455, 53 A.2d 30 (1947).

the employer/insurer, he would have the right under Rule 2–212 to intervene in it.

Rule 2–201 states, in relevant part:

"Every action shall be prosecuted in the name of the real party in interest, except that an executor, administrator, personal representative, guardian, bailee, trustee of an express trust, person with whom or in whose name a contract has been made for the benefit of another, receiver, trustee of a bankrupt, assignee for the benefit of creditors, or a person authorized by statute or rule may bring an action without joining the persons for whom the action is brought."

South Down's position is based on the first clause of Rule 2–201—the command that "[e]very action shall be prosecuted in the name of the real party in interest." Because of its statutory right of subrogation—its right to reimbursement from the proceeds of any award recovered from the third party—the employer/insurer is, under South Down's view, necessarily a real party in interest in an action brought by the employee. South Down observes that, in every circumstance contemplated by § 58 but this, the employer/insurer will be a named-plaintiff. Only where the employee, during the period of concurrency, brings the action in his own name is it possible for the employer/insurer not to be a plaintiff, and that gap, it insists, is filled by Rule 2–201.

Hayes, naturally, has a quite different view. He essentially ignores Rule 2–201 and looks only to Rule 2–211, dealing with the required joinder of parties. Under the criteria set forth in that Rule, he argues, Selective is *not* required to be joined as a plaintiff.

Rule 2–211 provides, in relevant part:

"Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

(1) complete relief cannot be accorded among those already parties, or

(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest."

None of these conditions, Hayes asserts, pertains here. Selective's right to reimbursement is fully protected by statute and is dischargeable only from whatever recovery may be obtained by Hayes. South Down will not—cannot—face another action by Selective, whatever may be the outcome of this case. Accordingly, the absence of Selective as a party will not (1) prevent complete relief from being accorded among those already parties, (2) impair or impede Selective's rights in any way, or (3) put South Down at risk of incurring multiple or inconsistent obligations.

The question of compulsory joinder of a subrogated employer/insurer has been presented to and discussed by the Court of Appeals in some earlier cases, but it does not appear to have been clearly and definitively resolved. The law elsewhere, particularly in Federal court interpretations of Fed.R.Civ.P. 17(a), is somewhat in conflict.

The issue was first considered by the Court of Appeals in *Stark v. Gripp*, 150 Md. 655, 133 A. 338 (1926). The plaintiff there was injured on the job in an automobile accident. He collected compensation from his employer and then sued, and recovered a judgment against, the third party causing the accident. The defendant appealed arguing, according to the Court, that "the right of the employer or insurer to reimbursement for compensation paid and incidental expenses, secured them by section 58 of the act, should, in a suit by the workman, be protected by having the suit instituted to their use, *pro tanto,* and the amount recovered apportioned in the verdict and judgment." *Id.* at

658, 133 A. 338.[3]   The Court rejected the argument so framed by it, holding at 658–59, 133 A. 338:

> "Even if that should be true, these appellants would have no interest to be protected by entering the suit so, or by having the judgment against them so apportioned, and they could not ask that the judgment be reversed for lack of these things. *And the statute does not require them.* Unlike the statute on death by negligence (Code, article 67), *this statute contains no requirement as to the form or title of the suit,* and requires no apportionment.   It speaks of a suit to be brought and prosecuted by the injured workman to enforce the liability, and provides only that from damages recovered the employer or insurer shall be reimbursed.   See *Bethlehem Steel Co. v. Variety Co.,* 139 Md. 313, 326 [115 A. 59].   It may not be improper, in a suit under section 58, to entitle the case as contended for, and to have the jury make an apportionment of the amount in their verdict, *but it is not necessary that it should be done.*"

(Emphasis added.)

The issue of involuntary joinder of an employer arose again, in a quite different context, in *Baltimore Transit Co. v. State,* 183 Md. 674, 39 A.2d 858 (1944).   That action stemmed from a fatal injury suffered by an employee of Baltimore City when a truck in which he was riding was struck by a streetcar.   The City, as a self-insured employer, paid compensation benefits to the decedent's dependents, who then sued the transit company and the owner and driver of the truck.   The transit company filed a third party

---

**3.**   This was the Court's characterization of the defendant's argument, but it appears to be somewhat broader than the argument actually made in the defendant's brief.   We see no complaint in that brief that the employer/insurer was not a party to the action or any indication that the defendant ever asked that it be made a party.   What the defendant complained of was the trial court's failure, in its instructions to the jury, to specify the amount to which the employer/insurer was entitled and to direct the jury to apportion any verdict for the plaintiff accordingly.   *See* Appellant's brief and transcript of record in No. 14, April Term 1926.

claim against the City, asserting that the driver of the truck was the City's agent, that the City was therefore responsible for his negligence, and that it was liable under the Joint Tortfeasors Act. The City, contending that its liability was limited by the Workmen's Compensation Act, obtained an order striking the third party claim, and that order became an issue raised by the transit company on appeal.

That issue, of course, is different from the one now before us; we are concerned with whether the employer/insurer can be compelled to join as a plaintiff, not whether the employer can be sued as a third party defendant. But in discussing the issue raised by the transit company, the Court, citing *Stark v. Gripp*, stated, without qualification, that "[s]ince the statute [§ 58] fixed the right to reimbursement, the employer or insurer is not a necessary party to a suit by the employee." 183 Md. at 678, 39 A.2d 858.

In *City of Baltimore v. Moore*, 209 Md. 516, 121 A.2d 857 (1956), the question now before us *was* squarely presented; the City, a defendant in an employee's action under § 58, appealed the refusal of the trial court to direct that the employer be made a co-plaintiff. Because the appeal was found to be untimely, however, the Court avoided the need to address the issue.[4]

The next, and penultimate, consideration of the issue under Maryland law came in *Jefferson v. Ametek*, 86 F.R.D. 425 (D.Md.1980). The employee there, a Maryland resident, was injured on the job and collected worker's compensation from her employer's insurer, INA, whose principal place of business was in Pennsylvania. She then brought suit in the U.S. District Court against Ametek, Inc., whose principal place of business was also in Pennsylvania, claiming that it was responsible for her injury. She sued for her own use and to the use of INA, and the issue arose as to whether,

---

**4.** Curiously, instead of dismissing the appeal on jurisdictional grounds, the Court affirmed the order appealed from, though it clearly did not address the merits of that order.

due to INA and Ametek both being regarded as Pennsylvania citizens, there was the complete diversity necessary for jurisdiction under 28 U.S.C. § 1332. That, in turn, depended on INA's status, in particular, whether it was a "properly named party." Ametek argued that INA was indeed a "properly named party," that, as a subrogated party under § 58, it was, in fact, a necessary party in interest. The Court (Judge Blair) rejected that argument, noting at 427

> "the statutory underpinning for the present cause of action. The Maryland Workmen's Compensation Act expressly authorizes Jefferson, as an 'injured employee,' to bring suit in her own name against the third party allegedly liable for her injuries. Md. Code Ann., Art. 101, § 58 (1979 supp.). Under both the federal and state rules, a party so authorized by statute is entitled to sue 'in his own name without joining with him the party [person] for whose benefit the action is brought.' Fed.R. Civ.P. 17(a); Maryland Rule 203(b)(10). Thus, unlike a case involving an insurer fully subrogated to the rights of its insured against a third party tortfeasor, this action is one in which there are two real parties in interest, *either of which is capable of bringing the action in its own name.*"

(Emphasis added.)

The issue was touched on most recently in *Collins v. United Pacific Ins. Co.,* 315 Md. 141, 553 A.2d 707 (1989). As here, an employee brought a third party action after receiving compensation. The employer/insurer was eventually added, by the employee and without objection, as a "use plaintiff," and its attorney participated to some extent in the trial of the case. The question before the Court was the extent to which the employer/insurer should share in the costs, expenses, and attorneys' fees incurred by the employee in prosecuting the action. In considering that issue, the Court discussed *Thomas v. Aetna Casualty and Surety Company,* 473 F.2d 164 (D.C.Cir.1972), noting that, in that case, the employee had brought a third party action "and the tort-feasor required the joinder of the compensa-

tion insurer as a real party in interest." *Id.* [315 Md.] at 147–48, 553 A.2d 707. In a footnote to that statement, the *Collins* Court said at 148 n. 5, 553 A.2d 707:

"The *Thomas* court applied District of Columbia law in holding that the insurer was a real party in interest. *City Stores Co. v. Lerner Shops of District of Columbia, Inc.,* 410 F.2d 1010 (D.C.Cir.1969). It opined, however, that the same result would obtain in Maryland because of the requirements of Art. 75, § 3, Md. Code (1951). That statute specifically provided that a person having a claim by reason of subrogation was a real party in interest, and that joinder could be compelled upon petition by a defendant. That statute was later repealed and replaced by Maryland Rule 203, and Rule 203 has now become Rule 2–201. Under ordinary circumstances, a person claiming pursuant to a subrogation interest continues to be a real party in interest. P. Niemeyer and L. Richards, *Maryland Rules Commentary,* 92. We need not here consider whether the legislature intended a different result by expressly granting the claimant the right to bring a third party action if the insurer did not do so within two months of the award of compensation. *Cf. City of Baltimore v. Moore,* 209 Md. 516, 121 A.2d 857 (1956); *Stark v. Gripp,* 150 Md. 655, 658–59, 133 A. 338 (1926). We note, however, that the claimant's right to maintain the third party action is not exclusive, for we have held that the insurer enjoys a right concurrent with that of the claimant to bring a third party action even after the two month statutory period has passed, and the insurer has an absolute right to intervene in a third party action brought by the claimant."

The question of compulsory joinder was not before the Court in *Collins,* and so there was no need for it even to mention, much less decide, that question. What gives us some pause is the fact that the Court (1) did mention the issue, (2) noted both the general rule that a subrogated insurer is a "real party in interest" and the *Thomas* Court's opinion that the general rule would apply in this context

under Maryland law, (3) cited *Stark v. Gripp* in questioning whether, in enacting § 58, the Legislature intended a different result, but (4) failed to note *Jefferson v. Ametek* or to indicate whether *Stark/Jefferson* or *Thomas* stated the correct view. If that is an indication that *Stark*, as confirmed briefly in *Baltimore Transit Co. v. State, supra*, 183 Md. at 678, 39 A.2d 858, and *Jefferson* do *not* control, then the issue is still an open one in Maryland. In an exercise of caution, we shall treat it as such.

As we indicated, one can find conflicting decisions outside of Maryland, particularly in the Federal courts. Larson's view of the general rule followed by the various State courts is consistent with the approach taken in *Stark* and *Jefferson.* He states (2 A. Larson, *The Law of Workmen's Compensation*, § 74.41(d)):

> "Although the employer or insurer may have a right to intervene in the employee's suit, their joinder cannot be compelled by the third-party defendant, if they choose to waive their right to join. The same result has been reached under Rule 17(a) of the Federal Rules of Civil Procedure on joinder of real parties in interest."

Many of the Federal decisions are also consistent with that view. Others are not.[5]

---

5. See, e.g., *Landon v. Lief Hoegh & Co.*, 521 F.2d 756 (2d Cir.1975), *cert. denied* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642, *reh. denied* 424 U.S. 935, 96 S.Ct. 1150, 47 L.Ed.2d 343; *Joyner v. F & B Enterprises, Inc.*, 448 F.2d 1185 (D.C.Cir.1971); *O'Brien v. Tri–State Oil Tool Industries, Inc.*, 566 F.Supp. 1119 (S.D.W.Va.1983); *McCoy v. Wean United, Inc.*, 67 F.R.D. 491 (E.D.Tenn.1973); *Race v. Hay*, 28 F.R.D. 354 (N.D.Ind.1961); *King v. Cairo Elks Home Association*, 145 F.Supp. 681 (E.D.Ill.1956); *but compare U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *Thomas v. Aetna Casualty and Surety Co., supra*, 473 F.2d 164; *Cross v. Harrington*, 294 F.Supp. 1340 (N.D.Miss.1969); *Neal v. Trim–Master Corporation*, 48 F.R.D. 392 (N.D.Miss.1969). These last two cases, *Cross* and *Neal*, each involved an application of the Mississippi workmen's compensation law. The Mississippi Supreme Court had held that the State law did *not* require compulsory joinder of the employer/insurer. *American Creosote Works of La. v. Harp*, 60 So.2d 514 (Miss.1952). The District Court, nonetheless, applied its own view of Fed.R.Civ.P. 17(a).

We believe that *Stark* and *Jefferson* represent the correct view of the Maryland law. We reach that conclusion for two reasons: first, because the plain wording of Rule 2–201 requires that result and, second, because when one looks at the historical development of Rules 2–201 and 2–211, it becomes evident that the question of compulsory joinder was intended to be resolved under the standards set forth in Rule 2–211, and that, in the event of any perceived conflict or inconsistency between the two Rules, Rule 2–211 would prevail.

The first reason is by far the easier to state. Rule 2–201 specifically excepts from the general directive an action brought by a person authorized by statute to bring it without joining the persons for whom the action is brought. Section 58, in our view, provides precisely that authority. It gives both the employee and the employer/insurer an independent right to sue and makes clear that, whichever one sues, the action, in effect, is on behalf of both. If the recovery is sufficient, the interest of both parties is statutorily protected: in the employee's suit, the employer/insurer has a second priority to recover the amount of its subrogated interest; in the employer/insurer's action, the employee gets the net proceeds in excess of that subrogated interest. That was the underlying rationale of *Stark* and *Jefferson* and we see nothing in the *Collins* footnote requiring any contrary result.

The logic of that view becomes even more clear when one examines the history of Rules 2–201 and 2–211.

The command that a civil action be prosecuted by the real party in interest seems, in its earliest derivation, to have been intended as much an *authorization* as a requirement. At common law, although choses in action, other than a claim for personal injuries, were generally assignable, the right to sue at law on the chose in action could not be assigned. It was therefore necessary, if an action at law was required, for the assignor to bring the action in his name, notwithstanding that the only party interested in the action (other than the defendant) was the assignee. *See* 1

J. Poe, *Pleading and Practice in Courts of Common Law*, § 432 (5th ed.1925). This was also the case in subrogation situations. *See, e.g., Hall & Long v. The Railroad Cas.*, 13 Wall. (80 U.S.) 367, 20 L.Ed. 594 (1872), and cases cited therein.

This formalistic restriction remained in the law except as chipped away by statute or rule. The chipping began in Maryland in 1763, when the Provincial General Assembly authorized the assignee of a bond or other obligation under seal to sue at law in his own name, provided that the assignor made oath that he had not received any part of the obligation. *See* 1763 Md. Laws, ch. 23, §§ 9, 10. That authority was extended in 1829 to permit direct actions by assignees of any judgment, bond, specialty, or other chose in action for the payment of money. 1829 Md. Laws, ch. 51. It was extended again the next year to include assignees of legacies or distributive shares of estates and equitable assignees of judgments. 1830 Md. Laws, ch. 165.

The first actual command that an action be brought by the real party in interest came in 1870, but it was limited to actions in ejectment. By 1870 Md. Laws, ch. 420, the Legislature declared that "actions of ejectment shall not be brought in the names of fictitious parties, or under fictions of lease, entry and ouster, but the real persons who are proper as plaintiff and defendant, shall be named." That statute was repealed two years later, however, in favor of a more simple directive that "[t]he action of ejectment shall be commenced by filing a declaration in which the real claimant shall be named as plaintiff, and the tenant in possession, or the party claiming adversely to the plaintiff, shall be defendant...." 1872 Md. Laws, ch. 346. Because these statutes dealt solely with actions in ejectment, however, they had a specific and independent purpose and are, at best, only very partial forerunners of the current "real party in interest" rule.[6]

---

**6.** As Poe points out (1 J. Poe, *supra,* §§ 257, 258), the writ of *ejectio firmae* was initially developed for the benefit of a lessee who had been

This 18th and 19th Century legislation, though helpful to assignees and owners of realty, still left subrogees not having the benefit of an actual assignment subject to the common law rule. That was cured by 1924 Md. Laws, ch. 551, which added to § 3 of art. 75 of the Code the requirement that

"[e]very action for damages wherein the judgment or any part thereof, which may be recoverable, shall inure to the benefit of any person claiming the same by reason of subrogation, shall be prosecuted in the name or names of the real party or parties in interest so claiming by subrogation; and upon petition of any defendant to said suit or action, the Court shall order any person having such right by subrogation to be made a party plaintiff."

Following the 1957 revision of the Maryland Rules, these various statutes were repealed. Their essence, however, was initially captured by three Rules. Rule 203 was essentially the same as current Rule 2-201. It was far broader than the 1924 amendment to art. 75, § 3, which dealt only with subrogation situations, and appears to have been taken principally from then-current Fed.R.Civ.P. 17(a). Some of the exceptions to the general command were derived from a Kentucky statute and from case law. *See* Editor's Note to former Rule 203 b.

---

ejected from the land, and thus a lease, an entry pursuant to the lease, and an ouster were essential elements in the case. Eventually—Poe lays this to the fertile mind of Lord Chief Justice Rolle—the writ was used where there was no actual tenancy as "a new and easier mode of trying titles." *Id.* at § 258. The lease, entry, and ouster became fictitious but were still alleged as elements of the action, even though the only issue sought to be resolved was the title of the "lessor." The real defendant—the person challenging the "lessor's" title—had to connive in this fiction by admitting the truth of the plaintiff's averments of lease, entry, and ouster, thus narrowing the issue "to the right of the lessor to make the lease, which, of course depended upon the solution of the question as to whether he had a sufficient title." *Id.* The purpose of the 1870 and 1872 statutes was simply to abolish these fictions, which had long outlived any usefulness, and to allow the action to be used to inquire directly into "the validity of the plaintiff's claim to the possession of the land in dispute." *Id.*

Interestingly, although Rule 203 was a general rule applicable in both law and equity cases, the Court dealt specifically with assignment and subrogation cases in two other Rules applicable only in law (as opposed to equity) cases. Rule 240 parroted the early statutes allowing assignees to sue in their own name. It was *permissive* in nature, providing that an assignee of a legacy or distributive share of an estate, a judgment, or certain choses in action *"may* maintain an action or issue execution in his own name...." (Emphasis added.) Rule 243, on the other hand, dealing with subrogees, was mandatory. It provided:

"[a] Where a judgment sought, or any part thereof, shall inure to the benefit of a person claiming by reason of subrogation, the action shall be brought in the name of the real party or parties in interest including those claiming by subrogation.

[b] Upon petition of a defendant, the court shall order any person to be made a party plaintiff who claims the right to have all or any part of the judgment sought inure to his benefit by subrogation."

That Rule was taken directly from the 1924 amendment to art. 75, § 3, and, because subrogation was an equitable doctrine, was still thought to be necessary in order to allow subrogees to sue at law. *See Report on Rules 203 and 209* from Joseph O. Kaiser, Reporter to the Rules Committee, dated March 30, 1955, p. 2. The *requirement* that any such action be brought in the name of the subrogee also, of course, was taken from the statute and remained a condition to the action. *Schnader, Inc. v. Cole Build. Co.*, 236 Md. 17, 22, 202 A.2d 326 (1964).

It is important to note that, in the 1957 revision, there was no counterpart to current Rule 2–211. Rule 208 provided for voluntary intervention, but, aside from Rules 203 and 243, there was no provision for the mandatory inclusion of "necessary" parties. The condition, or requirement, in Rule 243 that the action be brought in the name of the subrogee

therefore had a special significance. It was not, apparently, thought to be subsumed in Rule 203.[7]

The 1984 revision of the Maryland Rules brought three important changes in this regard. First, the distinctions between law and equity procedure were abolished. *See* Md. Rule 2-301 and Committee Note thereto. Second, the special provisions of former Rules 240 and 243 were deleted. Third, for the first time, a general rule on required joinder (Rule 2-211), drawn from Fed.R.Civ.P. 19, was adopted.

With the merger of law and equity procedure, special authorization for subrogees or other equitable assignees to sue at law was no longer necessary. And with a general rule on required joinder, the special requirement applicable just to subrogees was preempted. As that requirement had not previously been subsumed in Rule 203 but needed a special statement of it in Rule 243, the repeal of Rule 243 in light of Rule 2-211 would seem rather clearly to indicate that, thenceforth, issues of required joinder would be governed by Rule 2-211 and not by Rule 2-201.

This notion does not, in any sense, emasculate Rule 2-201. As Moore (3A *Moore's Federal Practice*

---

7. The "legislative" history of Rule 203 supports this inference. The earliest recorded draft of the Rule appears in a Memorandum to the Rules Committee dated June 14, 1949, from Edwin W. Lowe, Esq., who held the position of "Codifier." Section a. of the Rule, in that draft, stated: "Every action shall be prosecuted in the name of the real party in interest, *whether claiming by subrogation or otherwise....*" (Emphasis added.) Section c. provided that, on petition of any defendant, the court "may order the real party in interest to be made a party plaintiff, where it appears that the action has not originally been filed in his name." In his Explanatory Note to that section, the Codifier stated that it "was adapted from our statute requiring a person claiming by subrogation to prosecute an action in his own name."

Clearly, that early version of the Rule encompassed actions by subrogees. But the additional language in section a. was subsequently deleted in favor of a separate Rule dealing with subrogees; the Codifier's Explanatory Note to section c. was also deleted. What was once specifically *included* within the ambit of Rule 203 was thus consciously *excluded* from it and dealt with elsewhere.

§ 19.01[5.–2] ) observes with respect to the comparable Federal Rules (Rules 17(a) and 19):

"Rule 17(a) provides that every action shall be prosecuted in the name of the real party in interest. When there is a single real party in interest, an objection under Rule 17(a) is a contention that the action is brought by the wrong party, rather than an objection to want of additional parties, and the defect is one to be cured by substitution or ratification, rather than joinder. *When there is more than one party that is a real party in interest, and one of them has brought the action, the tendency has been to take the requirement of Rule 17(a) as met, and resolve the issue as a question of joinder under Rule 19.*"

(Footnotes omitted; emphasis added.)

That approach, we believe, gives proper meaning to both Rules. It is also fair, practical, and consistent with what we believe Rule 2–201 would dictate in any event. As South Down makes no argument that compulsory joinder is required under Rule 2–211, and as we see no basis for compulsory joinder under that Rule, we conclude that the Circuit Court acted correctly in denying the motion.

ORDER DENYING MOTION TO JOIN A PARTY PLAINTIFF AFFIRMED; APPELLANT TO PAY THE COSTS.