968 A.2d 620

**SERVICE TRANSPORT, INC.,**

v.

**HURRICANE EXPRESS, INC., et al.**

**No. 2054, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

March 27, 2009.

26

Michael J. Jacobs (Melanie J. Barney, Jacobs & Barney, on the brief), Easton, for Appellant.

David A. Skomba (Tamara B. Goorevitz, Franklin & Prokopik, PC, on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, ZARNOCH, and WRIGHT, JJ.

ZARNOCH, Judge.

In December 2005, appellant Service Transport, Inc. ("Service") filed suit in the Circuit Court for Caroline County against former employees Neil I. Brooke and Alan D. Glessner, seeking a declaratory judgment, damages, and injunctive and other relief for alleged violations of the Maryland Uniform Trade Secrets Act, Md.Code (1975, 2005 Repl.Vol.), Commercial Law (CL) Article, §§ 11–1201 *et seq.*[1] Service alleged that former employees Brooke and Glessner misappropriated confidential information, diverted funds or accounts receivables from Service to other persons or entities, and caused damages and losses to Service. Service later amended its complaint to add Advanced Transport, Inc. and appellees Hurricane Express, Inc., Hurricane Express Logistics, Inc., Kaedon Steinert, president of the Hurricane entities and his brother, Sheldon Steinert ("the Hurricane defendants").[2] On January 6, 2006, a temporary restraining order was issued to halt the alleged violations. The order was modified and later rescinded, when the court denied a request for a preliminary injunction. In October 2007, just before the scheduled trial, Service filed a motion to permit an amendment to its complaint to add Kaedon Steinert, Inc. ("KSI") as a previously undisclosed necessary party, which the trial court denied.[3] A

---

1. The complaint sought damages in the amount of $74,990.00, just below the amount in controversy that a defendant seeking removal to federal court could have invoked as a basis for diversity jurisdiction under 28 U.S.C. § 1332(a).

2. This appeal does not involve Brooke, Glessner, or Advanced Transport, Inc., and these parties have indicated to the Court that they do not intend to participate in the instant appeal.

3. Specifically by an Order dated October 26, 2007 the circuit court denied Service's Motion to Permit Amendment to Second Amended Complaint as Amended To Add Kaedon Steinert, Inc., As A Previously Undisclosed Necessary Party Defendant with Supplement to Motion To Permit Amendment to Second Amended Complaint As Amended To Add Kaedon Steinert, Inc., As A Previously Undisclosed Necessary Party Defendant and Second Supplement To Motion to Permit Amendment to

motion for reconsideration was also filed and denied on October 29, 2007. This pre-trial appeal followed.

Appellant presents the following issue for appeal:

Did the trial court err in its denial of the Plaintiff's motions seeking to add Kaedon Steinert, Inc. ("KSI"), as a previously undisclosed indispensable party defendant?

For reasons set forth below, we conclude that there was no error in the denial of these motions.

## FACTS AND LEGAL PROCEEDINGS

Service Transport, Inc. is a trucking brokerage business located in Hurlock, Maryland that ships frozen and fresh seafood. Through what it has described as its "employee brokers," Service arranges for the transport of goods owned by a shipper to a consignee (such as a restaurant or distributor). Goods are transported in trucks owned by third parties, and the shipper pays Service a fee for arranging the transport of its goods. Brooke and Glessner were employee brokers assigned by appellant to manage the route from the New England area to the West Coast, and the route from the West Coast to the New England area. According to Service, Brooke and Glessner were entrusted with important trade secrets and confidential information concerning the seafood transport business.

On November 28, 2005, Glessner tendered his resignation, at about the same time Service had begun investigating facts allegedly indicating that Glessner and Brooke had been conspiring with the appellees to use trade secret and confidential information to transfer appellant's customers to a new, competing seafood brokerage business in Seaford, Delaware, thereby damaging Service's business and business prospects. During its investigation, Service claimed to have uncovered deleted email communications dating back to August 2005 between appellees and Brooke and Glessner, which discussed

---

Second Amended Complaint As Amended To Add Kaedon Steinert, Inc., As A Previously Undisclosed Necessary Party Defendant.

the details of establishing a competing truck brokerage business.

Hurricane Express Logistics, Inc. was established to handle the brokerage side of the business. Hurricane Express, Inc. was set up to operate the carrier side. When Service became aware of the alleged involvement of the Hurricane defendants, it timely amended its complaint to add those parties.[4] The Hurricane defendants, all residents of Arkansas, were served with original process, interrogatories, and requests for production of documents. These interrogatories and requests asked the Hurricane defendants to fully identify and describe the activities and efforts to establish, operate, and fund the trucking brokerage business, and to identify and produce all records pertaining to the establishment and funding of the business.

The Hurricane defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction, which was denied on November 1, 2006. On the same date, Service filed a set of motions to compel responses to the interrogatories and request for documents. Hurricane opposed the motions. Service also filed motions to compel discovery on January 3 and 5, 2007. On February 9, 2007, Service amended its complaint to increase the *ad damnum* to exceed the threshold for federal diversity jurisdiction under 28 U.S.C. § 1332. Hurricane filed a Notice of Removal of the action to federal court on February 15, 2007, thereby staying all proceedings in the circuit court. On August 6, 2007, the United States District Court for the District of Maryland remanded the case to the circuit court.

On the morning of October 9, 2007, just before a deposition, Hurricane provided faxed copies of documents to Service, including a copy of a check identified as that of "Hurricane Express" as payment of some of the expenses of setting up and operating the new Seaford brokerage business. During

---

4. An August 27, 2006 Pretrial Scheduling Order required all amendments of pleadings to be filed by March 15, 2007. A later scheduling order, filed August 17, 2007 did not alter the deadline for amendments, but set the trial dates as October 29, 2007–November 2, 2007.

deposition, Kaedon Steinert admitted that the check was written on an account owned by KSI, a corporation of which he was president and an entity not previously disclosed by Hurricane.[5] During the deposition of Sheldon Steinert on October 10, 2007, he stated in essence that Hurricane Express, Inc. was a corporate shell used to hold the federal operating authority issued by the Federal Motor Carrier Safety Administration to enable Hurricane's trucks to haul interstate. He also said that Hurricane had no assets, no revenue or income, and paid no expenses to set up or operate the Seaford brokerage, which was actually owned and operated by KSI. Furthermore, Sheldon Steinert said that the checks used to fund operations indicated on their faces that the checks were from "Hurricane Express", with no indication that the checking accounts were actually those of KSI.

On October 12, 2007, following its claimed discovery that KSI was the entity which set up and operated the Seaford business, Service filed its motion to add KSI as a previously undisclosed necessary party.[6] The amended complaint ("comparative copy") was not actually filed until October 26, 2007. On the afternoon of October 26, 2007, the parties were advised by telephone that the circuit court had denied Service's motion. Service filed its Motion for Reconsideration, asking the court again to allow the amendment, to shorten the time for a response to the amended complaint and to grant a limited continuance to permit limited discovery with respect to KSI. On the scheduled trial date, with the jury waiting to be called

---

**5.** Appellees respond that "until deposition, Plaintiff had not asked the identity of all persons or corporations that may have funded or financed the creation of the defendant Hurricane Express Logistics, Inc." There is no need for us to address any factual dispute regarding KSI or how its role was disclosed. For purposes of resolving the necessary parties question, we will assume, without deciding, that Service's account is accurate. *See Cooper v. Bikle*, 334 Md. 608, 618, 640 A.2d 1120 (1994).

**6.** On October 4, 2007, in its Pretrial Statement filed pursuant to Md. Rule 2–504.2, Service indicated as to its need to amend any pleading: "None required."

for *voir dire,* this motion was heard in open court and denied.[7]
Service filed this appeal.

## DISCUSSION

### 1. Appealability

██ Because the case below has not concluded, the issue
naturally arises whether Service has a right to appeal at this
time. Appellees have not contested the issue. However, that
does not dispose of the matter, because we have an indepen-
dent obligation to determine whether appellate jurisdiction is
properly invoked.

Service's terse and singular reliance for its right to appeal
on *The Great Atlantic & Pacific Tea Co., Inc. v. Royal Crown
Bottling Co. ("A & P"),* 243 Md. 280, 220 A.2d 598 (1966), does
not resolve our concerns. That case involved a defendant's
attempt to assert a cross-claim against an alleged wrongdoer.
Concluding that a pre-trial denial of the right to bring the
cross-claim was immediately appealable, the Court of Appeals
relied primarily on what is now Md. Rule 2–331 (Counterclaim
and cross-claim), federal precedent, and its prior decision in
*Northwestern Nat. Ins. Co. v. Samuel R. Rosoff, Ltd.,* 195 Md.
421, 73 A.2d 461 (1950). *A & P,* 243 Md. at 284–85, 220 A.2d
598. *Rosoff* held immediately appealable as a final judgment
the denial of a defendant's attempt to implead third party
defendants. The decision cited for support a specific Mary-
land Rule, now Md. Rule 2–332, and federal cases. 195 Md. at
426–33, 73 A.2d 461.

---

7.  In denying the motion, the circuit court judge said:

    I was concerned about whether this was just—and this is in no
    disrespect to counsel, but whether this was just an attempt to further
    delay it, and I just say, No. This case has been around since
    December of 2005. And the Court has tried to manage it and push it
    through to make sure everybody got a timely hearing. I said, No, I
    am not going to do this. They've had enough time to have found this
    out before, you know, two days before we start the jury trial.

    . . .

    I am going to stand by my original . . . order not permitting Kaedon
    Steinert, Inc. to be [added] as a party at this late date.

Aside from the fact that this is neither a cross-claim nor an impleader case under the cited rules [8], the federal decisions cited in these old cases no longer provide unequivocal support for an immediate appeal in such cases. *See* 6 Wright, Miller & Kane, *Federal Practice & Procedure* § 1408 (1990)("In general, the dismissal of either a compulsory or permissive counter-claim or a cross-claim, or the refusal to dismiss one of these claims is interlocutory and cannot be appealed in advance of the final judgment in the main action.") and § 1463 ("Viewed from the perspective of appealability, the most important characteristic of an order allowing or rejecting impleader is that it does not terminate the action and therefore does not satisfy the final judgment rule.").[9]

Perhaps more on point and more helpful to Service's claim of appealability are *Kloze v. Provident Savings Bank of Baltimore,* 220 Md. 469, 154 A.2d 711 (1959) and *South Down Liquors, Inc. v. Hayes,* 80 Md.App. 464, 564 A.2d 119 (1989), *aff'd* 323 Md. 4, 590 A.2d 161 (1991). *Kloze* presented the opposite of the present case. A debtor sued a bank to invalidate an allegedly unlicensed transaction. He also unsuc-cessfully petitioned to have the Bank Commissioner "made a party" to the proceeding. *Id.* at 471, 154 A.2d 711. When he appealed an adverse judgment, the issue regarding the joinder of the Bank Commissioner was rejected on the basis of *Rosoff,* because "the order in question was filed and appealable forth-with, and . . . here the appeal from the subsequent order was not in time." Detracting somewhat from the weight of the case are the facts that it was argued *pro se* and the Court's opinion is so short (two pages) that we are not told whether

---

8. Both *A & P* and *Rosoff* were concerned that delay in appellate consideration would undermine rights conferred by these specific rules. Appellant's motion in the circuit court was based on Rule 2–341 (Amendment of pleadings) and Rule 2–211 (Required joinder of par-ties).

9. For reasons set forth below, there is no need to consider the question of whether, in light of the fact that Maryland rules on cross-claims and impleader are modeled after analogous federal rules, this erosion of federal precedent would call for a reexamination of *A & P* and *Rosoff.*

the Commissioner was sought to be joined as a plaintiff or defendant and on what theory. Moreover, the Court could not have refused to consider the joinder issue if the contention was that the Commissioner was a necessary party. *See* p. 34–35, 968 A.2d 626, *infra*. In *South Down Liquors*, there is a more thorough analysis. There, a defendant in a negligence action sought to join as a party-plaintiff the employee/plaintiff's workers compensation insurer. When joinder was denied, an appeal was taken before trial. Citing *Rosoff, supra* 195 Md. at 423, 73 A.2d 461, this Court, in essence, held that the denial was appealable as a "final" determination, 80 Md. App. at 466, n. 1, 564 A.2d 119, and went on to consider and reject the notion that the insurer was a necessary party. *Id.* at 480, 564 A.2d 119.

While neither case may be directly on point, *viz.*, involving the denial of a plaintiff's motion to join a party-defendant as a necessary party, in our view they are sufficiently supportive of the appellant's contention that we find that the pre-trial appeal here is proper as an appeal of a decision finally determining Service's right to proceed against the purported necessary party. We recognize that the federal rule is to the contrary. *See, e.g., Michelson v. Citicorp National Services, Inc.*, 138 F.3d 508, 512 (3rd Cir.1998) (Order refusing or permitting the filing of an amended complaint joining an additional party is not final and "not appealable in isolation."). However, we also note that in Maryland a necessary parties issue may be raised for the first time on appeal, *Bodnar v. Brinsfield*, 60 Md.App. 524, 532, 483 A.2d 1290 (1984), or even *sua sponte* by the appellate court. *Chairman of Board v. Waldron*, 285 Md. 175, 179–80, 401 A.2d 172 (1979). As an omnipresent question, there is some justification for allowing its rejection to be raised on appeal in a pretrial setting.

## 2. A Question of Terminology

In its motion in the circuit court, Service sought to join KSI as a "necessary" party. In this Court, appellant characterizes KSI as an "indispensable" party.

It is not uncommon for Maryland courts to use the term "necessary party" in describing state procedure under Maryland Rule 2–211 and the term "indispensable party" when referring to the federal practice under Rule 19 of the Federal Rules of Civil Procedure. *See, e.g., Cooper v. Bikle,* 334 Md. 608, 618–19, 640 A.2d 1120 (1994). Now that the State rule mirrors, in many respects, the federal rule, it has been suggested that federal terminology should be used. *See* Lynch & Bourne, *Modern Maryland Civil Procedure* § 4.6 (2d Ed.2004). Thus, when a court determines whether a party should be joined on the basis of the factors stated in Md. Rule 2–211(a), it determines whether the party is necessary.[10] However, if the court finds that an absent necessary party cannot be joined, it must determine under Rule 2–211(c) whether the case should continue or be dismissed.[11] If the court concludes that the case must be dismissed, the party is

---

10. Rule 2–211(a) states:

    Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the persons' absence
    (1) complete relief cannot be accorded among those already parties, or
    (2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations by reason of the person's claimed interest.
    The court shall order that the person be made a party if not joined as required by this section. If the person should join as a plaintiff but refuses to do so, the person shall be made either a defendant or, in a proper case, an involuntary plaintiff.

11. Rule 2–211(c) states:

    If a person meeting the criteria of (1) or (2) of section (a) of this Rule cannot be made a party, the court shall determine whether the action should proceed among the parties before it or whether the action should be dismissed. Factors to be considered by the court include: to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; to what extent the prejudice can be lessened or avoided by protective provisions in the judgment or other measures; whether a judgment rendered in the person's absence will be adequate; and finally, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

labeled "indispensable." *See Owens—Illinois, Inc. v. Meade,* 186 F.3d 435, 440 (4th Cir.1999).

Clearly, appellant did not ask the circuit court to determine whether its own case should possibly be dismissed for absence of an indispensable party under Rule 2–211(c).[12] Rather, it argued that under Rule 2–211(a), KSI should be joined as a defendant. Thus, we will use the term "necessary party" in describing appellant's contentions.

### 3. Standard of Review

■ The parties disagree over the standard of review applicable to the present case. Appellant argues that the scope of review is expansive because it is a legal determination of the trial court that is being reviewed and cites *In re Michael G.,* 107 Md.App. 257, 265, 667 A.2d 956 (1995), for that proposition. Appellees argue, on the other hand, that this case is reviewable under an abuse of discretion standard.

■ Without hesitation, we would agree with appellees if the issue were simply whether Service had the right to amend its complaint, *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443–44, 795 A.2d 715 (2002), or whether it was entitled to permissive joinder, *Swanigan v. Amadeo Rossi, S.A.,* 617 F.Supp. 66 (D.Mich.1985).[13] However, "[n]ecessary parties must be made parties to the proceeding." *Bender v. Secretary, Maryland Dept. of Personnel,* 290 Md. 345, 350, 430 A.2d 66 (1981).

The federal circuits are divided on the appropriate standard of appellate review of necessary and indispensable party determinations. For example, the Fourth Circuit applies the abuse of discretion standard to both issues. *National Union Fire Ins. Co. v. Rite Aid, Inc.,* 210 F.3d 246, 250, n. 7 (4th Cir.2000). On the other hand, the Third Circuit applies *de*

---

12. *4 Moore's Federal Practice* § 19.02[4] (3d Ed.2008) notes that compulsory joinder is usually raised by defendants.

13. Even the denial of an impleader request is subject to abuse of discretion review. *A & P, supra,* 243 Md. at 290–91, 220 A.2d 598.

*novo* review to the necessary party issue, but abuse of discretion to the indispensable party question. *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 174 (3rd Cir.1998). The Sixth Circuit reviews the former issue under abuse of discretion and the latter *de novo. Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1346 (6th Cir.1993). The District of Columbia Circuit reviews just one component of the necessary party determination *de novo. Western M.R. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 963 (D.C.Cir.1990). The Seventh Circuit has refused to decide the issue. *Thomas v. U.S.*, 189 F.3d 662, 666 (7th Cir.1999).

This is not the appropriate case for us to enter into this thicket. The circuit court's decision appears to focus on the late-blooming nature of Service's contentions, not a balancing of the factors set forth in Rule 2–211(a).[14] However, whether analyzed under an abuse of discretion standard or a *de novo* consideration of a legal issue, we believe the result would be the same: The circuit court's decision was correct.

### 4. The Declaratory Judgment Act.

Service points to Md.Code (1973, 2006 Repl.Vol.), § 3–405(a)(1) of the Courts & Judicial Proceedings (C & JP) Article, which states in part: "If Declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party." On the basis of this provision, appellant argues that its necessary party claim is strengthened because it has sought a declaratory judgment in addition to its action under the Uniform Trade Secrets Act. Service is wrong for two reasons.

■ First, there is no difference in a necessary parties analysis whether the Declaratory Judgment Act or Md. Rule

---

14. It is not clear whether a litigant, by simply crying necessary party on the eve of trial, can halt the proceedings. *Compare Judwin Properties, Inc. v. United States Fire Insurance Co.*, 973 F.2d 432, 434 (5th Cir. 1992)(Rule 19 "claims must normally be raised in a timely fashion prior to trial") with the 1966 Advisory Committee Note on Rule 19 of the *Federal Rules of Civil Procedure* (A necessary party may be added "at any stage," even "as late as the trial on the merits.").

2–211 is invoked. *See Gardner v. Board of County Commissioners*, 320 Md. 63, 76, 576 A.2d 208 (1990)("Generally, there is no difference in the rule as to necessary parties between a declaratory judgment proceeding and any other proceeding *in personam.*")

■ Second, appellant is not entitled to declaratory relief, at least with respect to the alleged misappropriation of trade secrets. Under § 3–409(b) of the C & JP Article, if there is a "special statutory remedy for a specific type of case" that remedy shall be followed in lieu of a proceeding under the Declaratory Judgment Act.[15] Service asserts a special statutory remedy under the Uniform Trade Secrets Act with respect to misappropriation of trade secrets and § 11–1207 of the CL Article makes that remedy exclusive.[16] Thus, Service's purported reliance on the Declaratory Judgment Act would not lead us to overturn the circuit court's decision.

### 5. Is KSI a Party that is Required to be Joined?

■ Appellant asserts that KSI is a necessary party, requiring joinder under Md. Rule 2–211(a). The requirements for compulsory joinder under Rule 2–211(a) are multi-fold:

1) the person must be subject to service of process;

---

**15.** The issue of compliance with § 3–409(b) is one that a court can raise *sua sponte. See Utilities, Inc. v. WSSC*, 362 Md. 37, 44, 763 A.2d 129 (2000).

**16.** Section 11–1207 provides:

(a) Except as provided in subsection(b) of this section, this subtitle displaces conflicting tort, restitutionary, and other law of this State providing civil remedies for misappropriation of a trade secret.
(b) (1) This subtitle does not affect:
(i) Contractual remedies, whether or not based upon misappropriation of a trade secret;
(ii) Other civil remedies that are not based upon misappropriation of a trade secret; or
(iii) Criminal remedies, whether or not based upon misappropriation of a trade secret.
(2) Nothing contained in this act may be applied or construed to waive or limit any common law or statutory defense or immunity possessed by State personnel as defined under § 12–101 of the State Government Article.

2) in that person's absence compete relief cannot be accorded among existing parties; or

3) disposition of the action may impair or impede the persons's ability to protect a claimed interest relating to the subject matter of the action; or

4) disposition may leave the existing parties subject to a substantial risk of incurring multiple or inconsistent obligations as a result of the person's claimed interest.

■ The primary purposes of this compulsory joinder rule are to assure that a person's rights are not adjudicated unless that person has had his 'day in court', and to prevent multiplicity of litigation by assuring a determination of the entire controversy in a single proceeding. *Mahan v. Mahan,* 320 Md. 262, 272, 577 A.2d 70 (1990).

Service made no showing in the circuit court that KSI was subject to service of process.[17] However, we shall assume that it is, because appellant obtained service over other defendants from Arkansas, including Kaedon Steinert, president and registered agent of KSI. Service argues that it cannot obtain complete relief because of appellees' "concealment of the key involvement" of KSI and the need to avoid "multiplicity of litigation without KSI being a party to the action." These arguments cannot prevail in the face of the obvious fact that, if Service's contentions are credited, KSI is a joint tortfeasor.

■ A joint tortfeasor is neither a necessary party nor an indispensable party because "[t]he plaintiff is under no obligation to join any and all potential tortfeasors when such parties are jointly and severally liable for the plaintiff's injuries." *Cooper v. Bikle, supra,* 334 Md. at 619–20, 640 A.2d 1120. In other words, "complete relief could be accorded among those already parties and Rule 2–211(a)(1) does not mandate the joinder." *Id.* at 620, 640 A.2d 1120.[18] Finally,

---

17. KSI is an Arkansas corporation, with some of its business conducted from an office located in Seaford, Delaware.

18. The "joint tortfeasor" exception to the compulsory joinder rule is not confined to common law torts, but is also applied to statutory remedies

the interest in limiting multiple litigation is "not controlling" when joinder of joint tortfeasors is sought. *Temple v. Synthes Corp.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990).

The "impair or impede" and "multiple liability" components of Maryland Rule 2–211(a)(2) focus on the concerns of the absent party and the liabilities of the defendants. Service, as the plaintiff in the circuit court, is hardly the ideal proponent of these interests. In addition, these considerations do not weigh in Service's favor.

In the typical case where a tortfeasor is rejected as a necessary party, courts rarely mention these factors, usually confining their discussion to whether "complete relief" can be accorded or merely labeling the tortfeasor a permissive party. *See, e.g., Temple v. Synthes Corp., supra,* 498 U.S. at 8, 111 S.Ct. 315, and *Cooper v. Bikle,* 334 Md. at 619–20, 640 A.2d 1120. One federal court has said of the Federal Rule 19(a) inquiry with respect to a joint tortfeasor:

> [T]he multiple proceedings and inconsistent results in state and federal courts that he seeks to avoid can occur wherever joint tortfeasors are not parties to the same lawsuit. This form of prejudice, however, does not require a finding that joint tortfeasors are necessary or indispensable parties.

*PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 204 (6th Cir.2001). This suggests a categorical exemption in the case of joint tortfeasors from all the requirements of Federal Rule 19(a) and, by implication, Md. Rule 2–211(a).

Moreover, even if the Rule 2–211(a)(2) factors were in play, we do not see why any "claimed interest" of KSI would not be adequately represented by its president, Kaedon Steinert, a named defendant. Nor would KSI's absence from this litiga-

---

for tort-like wrongdoing. *See, e.g., Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)(anti-trust laws); and *Letmate v. Baltimore–Ohio Railroad,* 311 F.Supp. 1059, 1063 (D.Md.1970)(Federal Employers Liability Act). Thus, the tort-like remedies for misappropriation under the Uniform Trade Secrets Act are subject to this exception to the necessary parties requirement.

tion subject Service to any liability, let alone "multiple" liabilities.[19]

▮▮▮ Even if Service, as plaintiff, were the type of party contemplated by Rule 2–211(a)(2), we still do not believe it would be prejudiced by KSI's nonjoinder. Maryland courts have recognized an exception to compulsory joinder requirements for persons who are directly interested in a suit and have knowledge of its pendency, and refuse or neglect to appear and avail themselves of their rights. *City of Bowie v. MIE Properties, Inc.*, 398 Md. 657, 704, 922 A.2d 509 (2007); *Bodnar v. Brinsfield, supra*, 60 Md.App. at 532, 483 A.2d 1290. In such cases, the rights of the absent parties are concluded by the proceeding as effectively as if they were named in the record. *Id.*

Certainly, KSI had notice of this lawsuit. Its president and registered agent for service of process is a defendant in the case and has been deposed. Yet KSI has not appeared to assert its rights. On the present state of the record, we believe that the absent party could be bound by this adjudication and thus, no Rule 2–211(a)(2) problem would exist. *See Lynch & Bourne* at § 4.6(b)(4), *supra* ("If Maryland continues to adhere to the principle that an absentee with notice may be bound, parties will not be confronted with the possibility of multiple inconsistent liability on account of the inability to join an absentee.").

Thus, we conclude that KSI was not a necessary party required to be joined under Maryland Rule 2–211(a). Because KSI was a mere permissive party, whose inclusion was sought on the eve of trial, long after scheduling deadlines had passed, it was neither legally erroneous nor an abuse of discretion for the circuit court to deny the requested joinder.[20]

---

**19.** The "multiple liability" inquiry focuses on the possible prejudice to an existing party who is "almost invariably the defendant." *4 Moore's Federal Practice,* § 19.02[3](a), *supra.*

**20.** On this appeal, Service points to alleged discovery violations by appellees and asks this Court to consider sanctions. Such issues are

JUDGMENT OF THE CIRCUIT COURT FOR CARO-LINE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.

---

beyond the scope of this interlocutory appeal. If appellant wishes to press these issues, it should do so with the circuit court.